UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DONNA B.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Case No.: 3:18-cv-00892-MK <br><br> OPINION AND ORDER |

**KASUBHAI, Magistrate Judge:**

Plaintiff Donna Raelene B. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") decision denying her application for Disability Insurance Benefits under the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Both parties consent to jurisdiction by a U.S. Magistrate Judge.

For the reasons discussed below, the Court affirms the Commissioner's decision.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental parties in this case.

1 – OPINION AND ORDER

# BACKGROUND

Plaintiff applied for Disability Insurance Benefits on August 7, 2013, alleging disability beginning September 7, 2012. Tr. 17. Her claims were initially denied, and Plaintiff timely requested and appeared for a hearing before Administrative Law Judge ("ALJ") Kelly Wilson on March 24, 2016. *Id.* After the hearing, the ALJ received a supplemental record consisting of the report from consultative examiner John Ellison, M.D., interrogatory responses of impartial vocational expert Leta Berkshire, and additional medical records. *Id.* The ALJ denied Plaintiff's application in a written decision dated February 28, 2017. *See* Tr. 17-30. Plaintiff sought review from the Appeals Council and submitted Plaintiff's psychiatrist Dr. Stacy Caraballo's letter. Tr. 15. The Appeals Council admitted Dr. Caraballo's letter but found that the letter does not relate to the period at issue. Tr. 2. The Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of the decision.

# STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, a court reviews the administrative record as a whole, "weighing both the evidence that supports and detracts from the ALJ's conclusion." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. *Id.* If the claimant satisfies her burden with respect to the first four steps, the burden shifts to the Commissioner at step five. *Id.*; *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

In the present case, the ALJ found that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date of September 7, 2012. Tr. 19. At step two, the ALJ found Plaintiff had the following severe impairments: "degenerative disc disease; osteopenia; plantar fasciitis; depressive disorder; anxiety disorder; [and] polysubstance abuse." Tr. 20. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ("Listings"). Tr. 20-21.

Prior to step four, the ALJ determined that Plaintiff retained residual functional capacity ("RFC") that allowed her to perform light work, "except [that] she can frequently balance, stoop, and climb ramps/stairs; she can occasionally kneel, crouch, and crawl; she cannot climb ladders,

ropes, or scaffolds; and she can perform simple and detailed tasks, but would have difficulty performing more complex tasks consistently." Tr. 22.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a Receptionist and Waitress. Tr. 30.

Plaintiff seeks review by this Court contending that (1) the ALJ improperly rejected Plaintiff's subjective complaints; (2) the Appeals Council erred in receiving but failing to consider the new evidence of Stacey Caraballo, Ph.D.'s opinion; and (3) the ALJ improperly rejected the opinion of consultative examiner John Ellison, M.D. Pl.'s Br. 7-20 (ECF No. 13).

**I. Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which … testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[2] provides that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029 at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ provided the following reasons for discrediting Plaintiff's subjective testimony: (1) treatment for Plaintiff's physical impairments has been routine, conservative and effective, and treatment for her mental impairment is effective, Tr. 24-26; (2) after the onset date, Plaintiff collected unemployment benefits, continued working as a caregiver, and participated in vocational rehabilitation, which suggest that she considered herself able to work; Tr. 26; (3) Plaintiff engaged in activities that are inconsistent with her complaints, Tr. 27; (4) Plaintiff was inconsistent regarding her substance abuse, *Id.*; and (5) the record reflects that Plaintiff appeared highly motivated to obtain disability benefits, Tr. 24, 27.

Plaintiff argues that the ALJ merely summarized the medical evidence but failed to identify what evidence undermined Plaintiff's testimony. Pl.'s Br. 10 (ECF No. 14) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). The Commissioner argues that the ALJ's reasons for discounting Plaintiff's subjective testimony were clear and convincing. Def.'s Br. 4-12 (ECF No. 20).

---

[2] Effective March 28, 2016, SSR 16-3p supersedes and replaces SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

**A. Treatment**

a. Physical Impairments

An ALJ may discredit a claimant's pain testimony based on a history of conservative treatment. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (finding that the ALJ provided clear and convincing reasons to properly decline to rely on the claimant's testimony and noting that the doctor prescribed only "conservative treatment" which suggested a lower level of both pain and functional limitation). Furthermore, evidence of effective treatment may support an ALJ's rejection of symptom allegations. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

The ALJ found that the record does not contain objective evidence that supports a disabling degree of limitation for Plaintiff's physical impairments. Tr. 24. Specifically, the MRI imaging of the thoracic spine in November 2013 shows only "minimal loss of the vertebral body height at T4, T6 and T7." Tr. 628. "There are a few minimal disc protrusions in the thoracic spine, but no evidence of neural impingement." *Id.*

In March 2014, treating physician Dr. Mitchell, D.O., diagnosed neck sprain and recommended ice, physical therapy, and prescribed Robaxin. Tr. 24, 686-87. The ALJ noted that Plaintiff was "exercising regularly" around this time. Tr. 24, 881. When Plaintiff sought treatment in January 2015 for her worker's compensation neck injury, Dr. Mitchell did not refer her to chiropractic treatment as she requested but told her to continue with physical therapy until she found it ineffective. Tr. 677. At the follow-up visit in three weeks, Plaintiff reported that her symptoms were "almost back to normal" and "therapy is helping so much." Tr. 674. On February 7, 2015, Dr. Mitchell documented that Plaintiff "has reached a stable point. … She

continues to have pain in the stated areas, but this is of a chronic nature and there has been some documented improvement per physical therapy report." Tr. 671. Dr. Mitchell believed that the "insignificant injuries as stated have essentially resolved." *Id.* Plaintiff was "released to return to work as she has been doing." *Id.* Plaintiff reported in March 2015 that she "continues to swim" and "is able to do things like her ADLs [Activities of Daily Living]" though "it is always uncomfortable." Tr. 700.

Regarding Plaintiff's plantar fasciitis, she reported continued foot pain for 12 years in March 2014, but she did not want further work-up at that time. Tr. 642. She sought treatment for plantar fasciitis in September 2015. Tr. 692-95. Dr. Davidson recommended physical therapy for pelvic tilt and gait training. Tr. 694. Plaintiff then reported in February 2016 that "[t]he pain of palpation of the feet is resolved" with physical therapy except "throbbing pain." Tr. 689.

The X-ray imaging in February 2016 for Plaintiff's cervical, thoracic, and lumbar spine showed "[m]oderate multilevel degenerative spondylosis in the cervical spine[;] [m]ild thoracolumbar scoliosis[;] [u]nchanged mild compression fractures at T6 and T7[;] [s]uspected new mild superior endplate compression fracture at T5 since prior MRI of 2013[;] … [m]ild degenerative disc disease at L4-L5." Tr. 742.

Consultative evaluating physician Dr. Ellison, M.D., performed a comprehensive musculoskeletal exam of Plaintiff in August 2016. Tr. 1035-37. Dr. Ellison confirmed the X-ray result of "mild thoracolumbar scoliosis" and "mild compression fractures of T6 and T7." Tr. 1037. Dr. Ellison assessed that Plaintiff's neck has limited range of motion and her right knee's flexion is limited to 90 degrees. *Id.* Plaintiff's shoulders are "normal except abduction restricted bilaterally to about 75 degrees." Tr. 1036. Dr. Ellison marked that Plaintiff does not use assistive devices. *Id.*

The record cited by the ALJ consistently documents conservative treatment and the effectiveness of the treatment for Plaintiff's physical impairments. The ALJ's reasons for discounting Plaintiff's subject testimony on these grounds are specific and supported by substantial evidence.

b. Mental Impairment

The ALJ found that Plaintiff's mental impairment has been generally well managed with treatment and she retained the mental capacity for simple and detailed tasks. Tr. 25. The ALJ cited the following record.

In June 2013, a psychiatric evaluation report stated that Plaintiff was not depressed. Tr. 386. In August 2013, Plaintiff received psychotherapy for anxiety due to her son's new diagnosis of herpes. Tr. 638. During the therapy, she talked about her plans for her future, including going back to school, filing for SSDI and not have to work, and move in with her new boyfriend and not have to work. *Id.* The record shows that Plaintiff's anxiety continued in October 2013 due to new medicine and problems with school. Tr. 907.

In February 2014, Plaintiff reported that "she feels stable since she has started on her medication through PCBH." Tr. 868. When asked what she wanted to work on that day related to her therapy treatment plan goals, Plaintiff responded "nothing." *Id.* During that therapy session, Plaintiff was calm and better rested. Tr. 872. Her attitude was pleasant and cooperative for the most part. *Id.* Plaintiff "attributes [her struggle with mood and anxiety] primarily to situational stress but does not feel like she needs a medication change." Tr. 873.

Plaintiff continued to report stable mental condition after the February 2014 session. In August 2014, Plaintiff reported that her mood was stable and good. Tr. 894. The therapy notes show that Plaintiff "[p]resents overall as psychiatrically stable. … Mood bright and possibly

hypomanic, however, is doing well and organized." *Id.* In April 2015, while still going through a lot of situational stress, Plaintiff was managing. Tr. 986. Plaintiff presented to be "notably calmer, better rested and better nourished." Tr. 985. Her mood was neutral to mildly bright with an appropriate affect. *Id.* Her thought content was appropriate. *Id.* She was negative for suicidal or homicidal ideation and free from debilitating preoccupations, false perceptions, or delusions. *Id.* Similarly, in November 2015, Plaintiff reported doing well overall. Tr. 960. In March 2016, Plaintiff reported that "[s]he is slowly improving as she works through her issues." Tr. 992.

The medical record cited by the ALJ is specific and shows with substantial evidence that Plaintiff's mental condition has been stable with treatment since February 2014.

**B. Unemployment Benefits and Earnings**

"Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (citation omitted). However, when "the record does not establish whether [the claimant] held himself out as available for full-time or part-time work," an ALJ's credibility finding against the claimant on the basis of receipt of unemployment benefits is not supported by substantial evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ found that Plaintiff's allegation of disability is inconsistent with her receipt of unemployment benefits after the onset date, because "[i]n order to qualify for such benefits, applicants must affirm that they are capable of working." Tr. 26. Additionally, Plaintiff's participation in vocational rehabilitation and filing of a workers' compensation claim suggest that she considered herself able to work. *Id.* The ALJ also noted that the vocational expert identified Plaintiff's job of home attendant "as a medium, semiskilled job of SVP 3." *Id.*

Plaintiff argues that applying for worker's compensation or unemployment benefits based on part-time earnings is not the same as holding out as capable of full-time work. Pl.'s Br. 12 (ECF No. 14). The record does not provide information on whether Plaintiff held herself out as available for full-time or part-time work. However, according to the record, while Plaintiff continued working as a home care worker between the last quarter of 2013 and the first quarter of 2015, she claimed having increased pain, stress, and fatigue and that she could only do minimal personal care, could not fix her hair, could not be on her feet long enough to prepare meals, and did no housecleaning. Tr. 239-40, 26-27, 288, 290. The ALJ found that Plaintiff's engagement in medium work at close to substantial gainful activity levels suggests that "she could do far more exertional work at a light or sedentary level for greater number of hours." Tr. 27.

Because Plaintiff's work as a home care worker is supported by the record, the Court will not disturb the ALJ's finding that Plaintiff's caregiver job undermines her claim of disability. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding the ALJ's adverse credibility finding against the plaintiff based in part on the plaintiff's recent work as a personal caregiver for two years).

### C. Activities of Daily Living

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). When considering the factor of daily activities, the Ninth Circuit has repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, and only if the level of activity is

inconsistent with the claimant's claimed limitations would these activities have any bearing on the claimant's credibility. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1287 n. 7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."); *Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")).

The ALJ found that Plaintiff's activities are "consistent with an ability to do some light exertional activities." Tr. 27. For instance, Plaintiff enrolled in school two months after the onset date and was taking a computer class, she kept herself limber with regular yoga, she attended Native American activities such as sweats, pow-wows, and dancing, and she reported being paid by the state to take care of her mentally ill sister. Tr. 27, 518, 860, 484. Plaintiff reported in late 2013 that "she was very busy and wouldn't be able to schedule an assessment until after the first of the year." Tr. 27, 878. The ALJ also noted that Plaintiff took trips to California. Tr. 27, 843, 969. Furthermore, Plaintiff reported in April 2014 that she was working 15 hours a week and attending school full time. Tr. 27, 644.

Plaintiff testified at the hearing that she had not engaged in pow-wows, fishing and hiking for three years. Tr. 796-80. Her travel to California required frequent rest stops. Tr. 81. She did not attend school full time but took no more than two classes, and she could not continue. Tr. 9, 55-56. Plaintiff also testified that she did not successfully take care of her sister. Tr 78.

11 – OPINION AND ORDER

Plaintiff's testimony is not entirely consistent with the record. For example, Plaintiff argues and testified that she did not attend school full time, but the record shows that she reported attending school full time in April 2014. *Compare* Pl.'s Br. 13 (ECF No. 13) *and* Tr. 55-56 *with* Tr. 644. The record also documents that Plaintiff reported having two trips to California, one in November 2013 to visit a high school friend and one in September 2015 for a family reunion. Tr. 843, 969. However, Plaintiff argues that she only had one trip to California "in a four-year period." Pl.'s Br. 13 (ECF No. 13).

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations and internal punctuation omitted). The ALJ listed Plaintiff's activities in the record and found that these activities are consistent with her ability to perform some light exertional activities. While the ALJ did not explain why these activities support Plaintiff's ability to perform light exertional activities, the ALJ's reasons are otherwise specific and supported by the record and contradict Plaintiff's pain testimony. In addition, Plaintiff's "very busy" activities after the onset date undermines her claim of debilitating pain. Therefore, the Court upholds the ALJ's finding.

**D. Inconsistency of Substance Abuse**

The ALJ found that Plaintiff's statements regarding her substance abuse are inconsistent with the record. Tr. 27. Specifically, in July 2013, Plaintiff denied using methamphetamine but tested positive, stating that she thought someone was lacing her food with it for a period of two months. Tr. 27, 495. The ALJ also found that Plaintiff's substance abuse has interfered with her ability to obtain work. Tr. 27. Plaintiff reported in December 2013 that "she uses medical

marijuana for her pain" and "she has been thinking about giving up medical marijuana use so she can obtain employment." Tr. 877-78. The record of the same day further states that "[Plaintiff] didn't seem overly interested in … stopping her use of medical marijuana even through [sic] she said she was. … She did realize she can't continue to smoke marijuana and do well with any school studies or gain employment." Tr. 878.

Plaintiff contends that she did not intentionally use methamphetamine and she did not withhold information from her medical providers. Pl.'s Br. 13-14 (ECF No. 13). Plaintiff's argument is misplaced. The ALJ acknowledged that substance abuse in and of itself does not impact the reliability of allegations. Tr. 27. Rather, the ALJ found that Plaintiff's inconsistent statements regarding her substance abuse casts doubt in her other statements. *Id.* The ALJ's finding regarding Plaintiff's inconsistent statements is supported by substantial evidence in the record and the Court upholds the ALJ's finding.

**E. Motivation to Obtain Disability**

Where an ALJ sets out specific findings supported by the record, a claimant's well-documented motivation to obtain social security benefits may cast doubt on the claimant's credibility. *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

In August 2013, Plaintiff told her therapist that she has three plans for her future, including "file for SSDI and not have to work." Tr. 638. In January 2015, Plaintiff's treating physician Dr. Mitchell noted: "The patient is a discouraging case. [S]ince she states she is earnestly seeking disability[,] I am sure her subjective complaints and evaluations will never improve until she gets what she is after. I will call her therapist to search for inappropriate pain behaviors." Tr. 677. In February 2015, Dr. Mitchell noted: "An important note is that the patient is highly motivated to get disability. She states she is looking forward to her disability rating

deteriorating another point or two because then she will qualify for disability payments." Tr. 671. The ALJ found that such evidence tends to undermine Plaintiff's subjective reports of her symptoms and limitations. Tr. 27. The ALJ further found that "[i]t is the combination of these inconsistencies, and not any one inconsistency in particular, that undermines the claimant's reliability as an accurate historian." Tr. 27.

On the issue of Plaintiff's subjective complaints, the Court finds that the ALJ's reasons to discredit Plaintiff are supported by the record. The reasons are specific and convincing. Accordingly, the Court upholds the ALJ's decision of a credibility finding against Plaintiff.

## II. Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Specific and legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray v. Commissioner*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)). "[T]he opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Dr. Ellison opined that Plaintiff could perform a reduced range of sedentary to light work. Tr. 1038-39. According to Dr. Ellison, Plaintiff could lift at the light level and carry at the sedentary level. Tr. 28, 1038. Additionally, Plaintiff could stand for 2 hours at one time without interruption, and 4 hours total in an 8-hour work day. Tr. 1039. Plaintiff could sit at one time without interruption for 4 hours and 8 hours in an 8-hour work day. *Id.* The ALJ gave some weight to Dr. Ellison's opinion regarding Plaintiff's ability to sit and lift, because it is consistent with the record as a whole. Tr. 28. The ALJ gave little weight to Dr. Ellison's opinion regarding Plaintiff's ability in carrying, standing, walking, postural activities, manipulative activities, and environmental limitations, because it is inconsistent with the record as a whole and is based on a one-time examination. Tr. 28-29.

Plaintiff asserts that the ALJ erred in giving little weight to Dr. Ellison's opinion. Pl.'s Br. 18 (ECF No. 13). Plaintiff reasons that "a consultative examiner is a medical source [that is]

qualified to provide a medical opinion," and argues that a one-time examination is not a proper basis to reject Dr. Ellison's opinion. Tr. 18-19. Additionally, Plaintiff argues that Dr. Ellison's opinion should be given more weight because it is based on a physical examination and a comprehensive review of the records. *Id.* at 19.

"Length of treatment relationship and the frequency of examination" are a factor in weighing medical opinions. 20 C.F.R. § 404.1527(c)(2); Pl.'s Br. 16 (ECF No. 13). Accordingly, it is proper for the ALJ to consider the one-time examination as a factor in giving little weight to Dr. Ellison's opinion. Further, the ALJ set out the following reasons for finding Dr. Ellison's opinion being inconsistent with the record: "the claimant's activities of daily living; the relatively conservative treatment history; the helpfulness of treatment as reported by the claimant; and the largely unremarkable objective findings." Tr. 29. As discussed above, these reasons are supported by the record when the ALJ discredited Plaintiff's subjective complaints. Therefore, the ALJ satisfied the substantial evidence requirement in giving little weight to Dr. Ellison's opinion for the same reasons.

Nonetheless, the ALJ notes that "even if Dr. Ellison's opined exertional limitations were adopted, the claimant would be able, at step 4 of the sequential evaluation process …, to perform her past work as a Receptionist …" Tr. 29. Plaintiff concedes the same. Pl.'s Br. 19 (ECF No. 13). A claimant able to perform past relevant work is not disabled. 20 C.F.R. § 404.1560(b)(3). Accordingly, Plaintiff essentially concedes that she is not disabled if Dr. Ellison's opinion is adopted.

**III. New Evidence Rejected by The Appeals Council**

"The Appeals Council will only consider additional evidence … if [the claimant] show[s] good cause for … submitting the evidence." 20 C.F.R. § 404.970(b). Specifically, "the Appeals

Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).

"[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). "Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." *Taylor v. Comm'r*, 659 F.3d 1228, 1233 (9th Cir. 2011). When considering the rejected new evidence, the district court first determines whether the Appeals Council was required to consider the new evidence. *See id.* at 1231. If the answer is affirmative, the court then determines "whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Id.* at 1232.

Plaintiff submitted Dr. Caraballo's letter as new evidence to the Appeals Council with her appeal. Tr. 9-10. The Appeals Council received but rejected Dr. Caraballo's letter because it "does not relate to the period at issue." Tr. 2. The Appeals Council then concluded that "it does not affect the decision about whether [Plaintiff was] disabled beginning on or before February 28, 2017. *Id.*

Because Dr. Caraballo's letter addresses Plaintiff's condition from June 2014, the Court finds that her opinion "relate[s] to the period at issue." Tr. 9. The question then is whether there

is a reasonable probability that Dr. Caraballo's letter would change the outcome of the decision. 20 C.F.R. § 404.970(a)(5).

The Commissioner asserts that Dr. Caraballo's opinion is not supported by the record as a whole and offers the following examples. Def.'s Br. 15-17 (ECF No. 20). Dr. Caraballo stated that Plaintiff "will frequently show up to the clinic thinking that she has an appointment when she doesn't, and will often miss her appointments because she can't keep herself organized enough to keep track of them." Tr. 9. To the contrary, the record reveals that Plaintiff was almost always on time and was only late two times according to the record. Tr. 932, 930. Dr. Caraballo opined that "[Plaintiff's] ability to function on tasks that require concentration, persistence, and a consistent pace are markedly affected." Tr. 9. The ALJ found that the record showed no more than moderate limitations in concentrating, persisting, or maintaining pace. Tr. 21-22. For example, the ALJ noted that despite her marijuana use prior to an appointment in December 2013, Plaintiff "presented with a mildly disorganized, distractible thought process, circumstantial at times but goal-directed with logical associations for the most part." Tr. 22 (citing Tr. 887). "[Plaintiff] was unable to perform serials 7s but was able to spell 'world' backwards and forwards with mild difficulty." *Id.* "She was able to recall 2/3 items after a five-minute delay." *Id.* The ALJ also noted that Plaintiff has routinely presented as alert and oriented. Tr. 22 (citing Tr. 873, 911, 940).

Additionally, Dr. Caraballo opined that Plaintiff's activities of daily living often becomes markedly limited when her symptoms increase and when she is in the depressed part of her Bipolar Disorder. Tr. 10. The Commissioner notes that the medical record does not include a diagnosis of Bipolar Disorder by any acceptable medical source. Def.'s Br. 16-17 (ECF No. 20).

The ALJ also did not find Bipolar Disorder as a severe impairment or an impairment. *Id.* at 17; *see* Tr. 20.

Plaintiff did not file a reply to respond to the Commissioner's argument and therefore has waived the argument on this issue. *United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011) (where an argument is available but not raised, it is waived). The Court finds that the record supports the Commissioner's argument. Because Dr. Caraballo's opinion is inconsistent with the record as a whole, the Court finds that Dr. Caraballo's opinion would not change the outcome of the decision. The Appeals Council did not err in rejecting the new evidence.

## CONCLUSION

For the reasons set forth above, the Court affirms the Commissioner's decision.

DATED this 18th day of July 2019.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge